**ALANA B. ANAYA, SBN 195758**
**ANAYA LAW GROUP**
2629 Townsgate Road, Suite 140
Westlake Village, CA 91361
Tel: (805) 230-9222
Fax: (805) 230-9221
Email: alana@anayalawgroup.com

Attorneys for Plaintiff,
Los Angeles Federal Credit Union

# UNITED STATES BANKRUPTCY COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | **Bankruptcy No.** 6:22-bk-10390-SY |
| Clayton D Thom | ADVERSARY NO. _____ |
| | COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523 (a)(2) |
| _____ | |
| Los Angeles Federal Credit Union, | |
| Plaintiff, | |
| vs. | |
| Clayton D Thom, and DOES 1 through 10, inclusive, | |
| Defendants. | |
| _____ | |

COMES NOW, Plaintiff, Los Angeles Federal Credit Union ("Plaintiff"), is a federal chartered credit union operating under the laws of the United States of America, duly authorized to conduct business in the State of California, and by its undersigned counsel, complains against Debtor and Defendant Clayton D Thom ("Defendant"), and alleges as follows:

///

///

---

COMPLAINT TO DETERMINE DISCHARGEABILITY

1

1. This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding over which the court has jurisdiction under 28 U.S.C. § 157(b).

2. Defendant is the debtor in a voluntary Chapter 7 bankruptcy case filed February 1, 2022, in the United States Bankruptcy Court, Central District of California, and assigned case number 6:22-bk-10390-SY. The last day for Plaintiff to file a complaint to determine dischargeability of debt under 11 U.S.C. § 523 is set for May 9, 2022.

3. This is an adversary proceeding to determine the dischargeability of debt owed to Plaintiff by Defendant pursuant to 11 U.S.C. § § 523(a)(2).

4. Plaintiff is not listed as a creditor of Defendant in Defendant's Bankruptcy petition filed in the above captioned case.

## FIRST CAUSE OF ACTION

### (TO DETERMINE THE DISCHARGEABILITY UNDER 11 U.S.C. §523(a)(2)(A))

5. Plaintiff incorporates by reference as though fully set forth herein each and every allegation contained in Paragraphs 1 through 4 inclusive.

6. On or about November 6, 2020, Defendant LOTUS OF UPLAND, LLC presented a Retail Installment Sales Contract to the Plaintiff for purchase through CLAYTON THOM DBA LOTUS OF UPLAND'S CU Direct Corporation Dealer Agreement Account. Said Agreement has been duly assigned to Plaintiff by Defendant LOTUS OF UPLAND, LLC to which Plaintiff paid Defendant the sum of $30,249.21. The agreement was for the sale of a 2005 Chevrolet Corvette, Vehicle Identification Number 1G1YY24UV55101098 ("Vehicle").

7. The agreement was assigned pursuant to the CU Direct Corporation Dealer Agreement ("CUDL") agreement. Pursuant to the agreement, Defendant made numerous warrantees to Plaintiff in order to induce them to purchase the RIC.

8. Specifically, with respect to the transaction at issue in this complaint the Defendant made the following warrantees:
   a. The Member or Other Purchaser and co-applicant do not have a defense, recoupment, set-off, or counterclaim to payment of the obligation evidenced by the

      RIC Form;
- b. The RIC and the security interest or ownership interest created by the RIC and held by Dealer in the collateral described in the RIC shall be transferred to Financial Institution free and clear of any security interest, encumbrance, lien, or claim of any third party;
- c. Dealer has a right to sell the collateral described on the purchase order or RIC free and clear of all liens and encumbrances and such collateral has been transferred to the Member or Other Purchaser free and clear of any security interest, encumbrance, lien or claim of any third party, except for the lien in favor of Financial Institution created by the RIC and the assignment of the RIC by Dealer to Financial institution, which lien shall be applied for by Dealer upon a properly prepared, executed and filed application for certificate of title, notation of lien or other filing so as to reflect that Financial Institution has a first priority perfected security interest in the collateral described in the RIC, and which certificate of title, notation of lien or other filing shall be issued to Financial Institution in accordance with applicable law within such time so as not to create any risk of rescission or avoidance under bankruptcy, insolvency, receivership, or other applicable law;
- d. Indemnification – Dealer shall defend and indemnify Financial Institution and CUDC against and hold Financial Institution and CUDC harmless from and against all claims, actions, suits, proceedings, costs, expenses, losses, damages, defenses, and liabilities, including reasonable attorneys' fees, arising out of, connected with, relating to or resulting from any claim or contention, whether well-founded, baseless or otherwise, howsoever relating in any way to the vehicle or the advertising or sale of the vehicle or relating in any way to the making of the RIC, including, but not limited to, a violation of, or failure to comply properly with, any consumer laws relating to the Member's or Other Purchaser's application, the RIC Form, this Agreement, any negligent or intentional act or omission, failure to properly service the vehicle, breach of warranty, or nonconformity of the goods.

9. Plaintiff has learned that Defendants have breached the above referenced warrantees as claims by third parties were made to Plaintiff after the agreement was assigned to Plaintiff. Defendant Clayton Thom then knowingly sold the vehicle intending to keep all of the proceeds from the sale even though he had not paid the owner who had consigned the Vehicle to him and had the credit union finance that sale. The credit union reasonably relied on the representations of Defendant Thom. At the time of the transaction and had no knowledge of Defendant Thom's secret intentions. Defendant Thom had no intention of honoring the agreement and intended to keep the proceeds from the sale for his own use instead of paying the owner of the Vehicle which was consigned to him. As a result, Title was

1  never perfected in the name of the credit union and the credit union has suffered a loss in the
2  amount of not less than $30,249.21.

3      10.  Defendant Thom was aware that if he did not pay the owner who consigned the
4  vehicle to him, that he would not be able to prefect the interest of the credit union in the
5  vehicle.  Despite this knowledge Defendant Thom proceeded to abscond with the sales funds.

### **PRAYER**

WHEREFORE, Plaintiff prays that this Court enter judgment for Plaintiff as follows:

1. To determine that Defendant's debt to Plaintiff is nondischargeable in accordance with the provisions of the Bankruptcy Code in the principal sum of $30,249.21;
2. For an award of pre-judgment interest at the contract or legal interest rate;
3. For attorneys fees' as provided by contract or by law;
4. For costs of suit;
5. That Plaintiff have such other further relief as the Court deems just and appropriate.

Dated:  3/14/2022                                 Anaya Law Group

                                                  By  /s/Alana B. Anaya
                                                  Alana B. Anaya
                                                  Attorneys for the Plaintiff,
                                                  Los Angeles Federal Credit Union